ELECTRONIC

**July 11, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: **08-21989-CIV-MOORE/SIMONTON**

VILMA MARTINEZ-AZOY, Individually
and on behalf all others similarly situated,

     Plaintiffs,

vs.

LIFELOCK, INC., a Delaware Corporation;
RICHARD TODD DAVIS, a citizen of the
State of Arizona, and JOHN DOES 1 through
10, Inclusive,

     Defendants.

_____/

## DEFENDANTS' NOTICE OF REMOVAL AND SUPPORTING DECLARATION OF TOM NICHOLS

PLEASE TAKE NOTICE that Defendants LifeLock, Inc. ("LifeLock") and Richard Todd Davis ("Davis") (collectively, "Defendants"), by and through their attorneys of record herein, file this Notice of Removal, removing this case from the Circuit Court of the 11th Judicial District in and for Miami-Dade County, Florida, pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, to the United States District Court for the Southern District of Florida, for the following reasons.

1. Plaintiff Vilma Martinez-Azoy ("Plaintiff") filed this putative class action against Defendants on or about May 23, 2008, in the Circuit Court of the 11th Judicial District in and for Miami-Dade County, Florida, entitled *Vilma Martinez-Azoy, et al. v. LifeLock, Inc., et al.*, Docket No. 08-29386 CA 19 (the "Action").

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

1 of 38

2.    Defendants were served with the Summons and Complaint and Demand for Trial by Jury ("Complaint") on June 13, 2008.  Pursuant to 28 U.S.C. § 1446(a), a true copy of the foregoing documents is attached hereto as Exhibit 1.  No other pleadings or other documents in the Action have been served on Defendants.

3.    This case is removable to the Southern District of Florida pursuant to 28 U.S.C. §§ 1332(d)(2)(A) and 1441, in that there is diversity of citizenship for the following reasons. The Action is a putative class action in which any member of the class is a citizen of a state different from any defendant.  Plaintiff is a citizen of Florida and a resident of Miami-Dade County, Florida.  Complaint, ¶ 21.  She purports to represent a class consisting of "[a]ll residents of the State of Florida (including persons and business entities) that subscribed to LifeLock during the longest period permitted by the applicable statute of limitations."  Complaint, ¶ 116. At all relevant times, LifeLock is and was a citizen of a state other than Florida, in that it is and was a Delaware corporation with its principal place of business located at 60 E. Rio Salado Parkway, Tempe, Arizona.  At all relevant times, Davis is and was a citizen and resident of Chandler, Arizona.  The putative class exceeds 100 members.  Complaint, ¶ 117.

4.    The amount in controversy exceeds $5,000,000, exclusive of interest and costs. LifeLock's revenues from Florida members from 2005 to the date of filing of the Action exceeded $9,000,000.  *See* Declaration of Tom Nichols, attached hereto, ¶ 2.  In addition, Plaintiff alleges that putative class members pay approximately $110 per year for LifeLock's services.  Complaint, ¶ 113.  There currently are over 73,000 LifeLock subscribers who are Florida residents, and Plaintiff is seeking rescission of the putative class members' subscriptions. Nichols Dec., ¶ 2; Complaint at p. 25.  Moreover, LifeLock's projected revenues from Florida from its presently existing members and from prospective future members, which is at risk in this

2

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

2 of 38

litigation based on Plaintiff's request for injunctive relief barring LifeLock from advertising or selling its services for Florida members as set forth in the Complaint, also far exceed the required amount in controversy of $5,000,000, when viewed from Defendants' perspective and Defendants' revenues at risk of being lost by the relief sought in this case.  Nichols Dec., ¶ 2. Plaintiff's claims for attorneys' fees and punitive damages further increase the amount in controversy (although Defendants do not concede that Plaintiff is entitled to such relief). Complaint at p. 26.

5.     This case also is removable to the Southern District of Florida pursuant to 28 U.S.C. §§ 1332(a) and 1441, in that Plaintiff is, and was at the time of the commencement of the Action, a citizen of Florida, and a resident of Miami-Dade County, Florida.  Complaint, ¶ 21. LifeLock is, and was at the time of the commencement of the Action, a citizen of a state other than Florida, in that it is and was a Delaware corporation with its principal place of business located at 60 E. Rio Salado Parkway, Tempe, Arizona.  Davis is, and was at the time of the commencement of the Action, a citizen and resident of Chandler, Arizona.  Because Plaintiff and Defendants are citizens of different states, there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     The case also is removable to the Southern District of Florida pursuant to 28 U.S.C. §§ 1331 and 1441, in that this Court has original subject matter jurisdiction over the Action for the following reasons.  28 U.S.C. § 1331 provides that District Courts shall have original jurisdiction over all civil actions arising under the Constitution and/or the laws of the United States. The Action alleges, among other things, that LifeLock's conduct violates the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") and that this conduct serves as a

3

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

3 of 38

predicate for Plaintiff's purported claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204.  Complaint, ¶¶ 131-139.  Although Plaintiff does not specifically plead a federal question cause of action pursuant to the FCRA, federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's FDUTPA claims raise a disputed and substantial federal issue – whether Defendants violated the FCRA.  *See Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308; 125 S. Ct. 2363; 162 L. Ed. 2d 257 (2005).  In *Grable*, the question presented to the Court was:  "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* at 314.  Finding that the plaintiff premised its state claim on federal law, the Court held that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court."  *Id.* at 315.  The same rule applies to this case – the meaning and application of the FCRA is an important federal issue and sensibly belongs in federal court.  Moreover, there are similar cases pending in, or being removed to, federal courts in other districts around the country, each involving allegations premised upon LifeLock's national advertising of its nationally available services and seeking determinations of law under the FCRA.

7.     As required by 28 U.S.C. § 1446(b), this Notice of Removal is being filed within 30 days of receipt by Defendants, by service of process or otherwise, of the initial pleading in the Circuit Court of the 11th Judicial District in and for Miami-Dade County setting forth the claims for relief on which such proceeding is based and which establishes the right to remove this action to this Court.  By filing this Notice of Removal, Defendants do not waive any rights or defenses, and expressly reserve all rights and defenses they may have relating to the Action.

4

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

4 of 38

8.     Upon filing this Notice of Removal, Defendants also are serving counsel for Plaintiff and filing copies of this Notice of Removal with the Circuit Court of the 11th Judicial District in and for Miami-Dade County, to effect removal of the Action to the Southern District of Florida, pursuant to 28 U.S.C. § 1446(d).

9.     WHEREFORE, Defendants pray that this Action, now pending in the Circuit Court of the 11th Judicial District in and for Miami-Dade County, be removed therefrom to the Southern District of Florida.

DATED: July 11, 2008.                    Respectfully submitted,

                                         GREENBERG TRAURIG, P.A.
                                         *Attorneys for Defendants LifeLock, Inc. and Richard Todd Davis*

                                         By: _____
                                              Francisco O. Sanchez
                                              Florida Bar No. 0598445
                                              1221 Brickell Avenue
                                              Miami, Florida  33131
                                              Telephone :  (305) 579-0500
                                              Facsimile:    (305) 579-0717
                                              Email:sanchezfo@gtlaw.com

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

5 of 38

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Removal

has been served by U.S. Mail upon **Robert N. Einhorn, Esq.** and **Marlon J. Weiss, Esq.**, Zarco

Einhorn Salkowski & Brito, P.A., Attorneys for PLAINTIFFS, Bank of America Tower, 100

S.E. 2nd St., 27th Floor, Miami, Florida 33131; and **Justin M. Klein, Esq.** and **David S. Paris,**

**Esq.**, Marks & Klein, LLP, 63 Riverside Drive, Red Bank, New Jersey 07701, Co-Counsel for

PLAINTIFFS on this 11th day of July, 2008.

By: _____

Francisco O. Sanchez

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

6 of 38

## DECLARATION OF TOM NICHOLS

I, Tom Nichols, declare:

1.      I am of majority age and am the Director of Marketing, Financial Planning and Analysis for Defendant LifeLock, Inc. ("LifeLock"). My responsibilities include tracking sales, revenue and subscriber data for LifeLock, including such data particular to subscribers who are Florida residents. I make this Declaration in support of LifeLock's Notice of Removal to Federal Court in the matter of entitled *Vilma Martinez-Azoy, et al. v. LifeLock, Inc., et al.*, Docket No. 08-29386 CA 19 (the "Action"). I have personal knowledge of the following facts, to which I would competently testify if necessary.

2.      I have reviewed the Complaint and Demand for Trial by Jury ("Complaint") in the Action. Based on my review, the amount in controversy exceeds $5,000,000, exclusive of interest and costs. LifeLock's revenues from Florida members from 2005 to the date of filing of the Action exceeded $9,000,000. In addition, there currently are over 73,000 LifeLock subscribers who are Florida residents, and Plaintiff is seeking, among other things, rescission of the putative class members' subscriptions. Complaint at p. 25. Moreover, LifeLock's projected revenues from Florida from its presently existing members and from prospective future members, which is at risk in this litigation based on Plaintiff's request for injunctive relief barring LifeLock from advertising or selling its services for Florida members as set forth in the Complaint, also far exceed the required amount in controversy of $5,000,000, when viewed from LifeLock's perspective and its revenues at risk of being lost by the relief sought in this case.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on July 11, 2008 in TEMPE , Arizona.

Tom Nichols    7/11/08

Thomas J. Nichols

# EXHIBIT 1

| ☐ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA | | |
|---|---|---|
| CIVIL DIVISION | **CIVIL ACTION SUMMONS**<br>Personal Service on a Corporation 08<br>(En Espanol al Dorso)    (Francais Au Verso) | **CASE NUMBER**<br>-29386 CA 10 |
| PLAINTIFF(S)<br><br>VILMA MARTINEZ-AZOY,<br>Individually and on behalf of all<br>others similarly situated, | VS. DEFENDANT(S)<br><br>LIFELOCK, INC., a Delaware<br>Corporation; RICHARD TODD<br>DAVIS, a citizen of the State of<br>Arizona, and JOHN DOES 1 through<br>10, Inclusive, | CLOCK IN |
| To Defendant(s):<br>LIFELOCK, INC.c/o REGISTERED AGENT | Address:<br>CORPORATE SYSTEMS, INC.<br>505 BROOKFIELD DR.<br>DOVER, DE 19901 | |

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

MIAMI-DADE COUNTY COURTHOUSE
Clerk of the Circuit Court
Circuit Civil
73 W. Flagler St. #242
Miami, FL 33130

Additional Court locations are printed on the back of this form.

You must also mail or take a copy of your written responses to the "Plaintiff/Plaintiff's Attorney" named below.

| Plaintiff/Plaintiff's Attorney<br><br>MARLON J. WEISS, ESQ. | Address: | ZARCO EINHORN SALKOWSKI &<br>BRITO, P.A.<br>100 S.E. 2ND STREET, SUITE 2700<br>MIAMI, FL 33131<br>Tel: 305.374.5418<br>Fax:305.374.5428 |
|---|---|---|

| TO EACH SHERIFF OF THE STATE OF FLORIDA: You are commanded to serve this Summons and a copy of the Complaint of this lawsuit on the above named defendant. | | | |
|---|---|---|---|
| CLERK OF COURT | BY: **GEORGINA TAYLOR** _____ | COURT SEAL | DATE<br>MAY 2 3 2008 |

| ☐ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA | | |
|---|---|---|
| CIVIL DIVISION | **CIVIL ACTION SUMMONS**<br>Personal Service on a Corporation<br>(En Espanol al Dorso)     (Francais Au Verso) | CASE NUMBER<br>- 2 9 3 8 6 |
| PLAINTIFF(S)<br><br>VILMA MARTINEZ-AZOY,<br>Individually and on behalf of all<br>others similarly situated, | VS. DEFENDANT(S)<br><br>LIFELOCK, INC., a Delaware<br>Corporation; RICHARD TODD<br>DAVIS, a citizen of the State of<br>Arizona, and JOHN DOES 1 through<br>10, Inclusive, | CLOCK IN |

| To Defendant(s):<br>RICHARD TODD DAVIS | Address:<br>957 E CEDAR DR<br>CHANDLER, AZ 85249-3322 |
|---|---|

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

MIAMI-DADE COUNTY COURTHOUSE<br>
Clerk of the Circuit Court<br>
Circuit Civil<br>
73 W. Flagler St. #242<br>
Miami, FL 33130

Additional Court locations are printed on the back of this form.

You must also mail or take a copy of your written responses to the "Plaintiff/Plaintiff's Attorney" named below.

| Plaintiff/Plaintiff's Attorney<br><br>MARLON J. WEISS, ESQ. | Address: | ZARCO EINHORN SALKOWSKI &<br>BRITO, P.A.<br>100 S.E. 2ND STREET, SUITE 2700<br>MIAMI, FL 33131<br>Tel: 305.374.5418<br>Fax:305.374.5428 |
|---|---|---|

| TO EACH SHERIFF OF THE STATE OF FLORIDA: You are commanded to serve this Summons and a copy of the Complaint of this lawsuit on the above named defendant. | | |
|---|---|---|
| CLERK OF COURT<br><br>BY: _____ | **GEORGINA TAYLOR**<br>COURT<br>SEAL | DATE |

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.  08-29886 CA10

VILMA MARTINEZ-AZOY, Individually and on behalf of all others similarly situated,

        Plaintiffs,

vs.

LIFELOCK, INC., a Delaware Corporation; RICHARD TODD DAVIS, a citizen of the State of Arizona, and JOHN DOES 1 through 10, Inclusive,

        Defendants.

**CLASS REPRESENTATION**

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, Vilma-Martinez-Azoy, individually, and on behalf of all others similarly situated, by and through her counsel, Marks & Klein, LLP, and Zarco, Einhorn Salkowski & Brito, P.A. and hereby brings this action against Defendants, LifeLock, Inc., Richard Todd Davis, and John Does 1 through 10 (collectively, "Defendants"). In support thereof, Plaintiff alleges as follows:

### I.    NATURE OF THE CASE

1.    This is a class action lawsuit brought by, and on behalf of, Florida subscribers of LifeLock, Inc. ("LifeLock"), a company that holds itself out as "the industry leader in the rapidly growing field of Identity Theft Protection."

2.    This matter arises from the deceptive business practices and fraudulent advertising campaign implemented by LifeLock, its agents, employees, and representatives,

1

through which it has induced nearly one million individuals, including the Plaintiff and the Putative Class in the state of Florida, into subscribing to the identity theft protection services the company purportedly provides.

3. To induce consumers across the country to subscribe to its services, LifeLock claims in its advertisements that it will prevent any possibility of identity theft, in any form.

4. In LifeLock's ubiquitous marketing campaign, the company's Chief Operating Officer ("CEO"), Richard Todd Davis ("Davis"), cavalierly broadcasts his own social security number – 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 – on television and radio stations across the country, proclaiming his unwavering confidence in LifeLock's purported protections.

5. In reality, however, LifeLock simply does not provide the level of identity protection that it advertises in its deceptive marketing campaign.

6. Contrary to the all-encompassing identity protection LifeLock advertises, its protection only extends to limited, credit-related instances of identity theft.

7. Even in those limited credit-related instances, LifeLock does not necessarily protect its subscribers' identities as advertised.

8. Indeed, the representations made by LifeLock's CEO are false and misleading because his own identity was stolen while he was a LifeLock customer.

9. While LifeLock has only publicly acknowledged that Davis's identity was compromised on one (1) occasion, there are more than twenty (20) driver's licenses that have been fraudulently obtained through the misappropriation of Davis's personal information.

10. Furthermore, a simple background check performed using Davis's social security number reveals that his entire personal profile has been compromised to the extent that

2

the birth date associated with his social security number is November 2, 1940, which inaccurately makes Davis 67 years old. This is clearly fraudulent information.

11.     In addition to its inability to provide the level of protection it advertises, LifeLock fails to disclose and intentionally omits from its advertisements the potential **harms** that its services may have on consumers.

12.     As described in further detail below, LifeLock's services can actually have an **adverse** impact on the consumer's ability to obtain credit or favorable interest rates.

13.     Furthermore, in its advertisements, LifeLock fails to advise or make clear to consumers that they could perform each of LifeLock's services on their own, free of charge.

14.     Instead, in the few advertisements in which LifeLock does allude to this fact, LifeLock preys on consumer fears and misleads potential subscribers into believing that the services it provides embody a complicated, time-consuming process that require LifeLock's "expertise" and assistance.

15.     LifeLock also fails to adequately disclose and intentionally omits from its advertisements that the information that the credit reports it orders on behalf of the subscribers is the **free** annual credit report, which subscribers are entitled to receive when placing their own fraud alerts, pursuant to 15 U.S.C. §1681c-(a)(2)(B).

16.     As a result, when LifeLock orders the free annual report, it renders the subscribers ineligible to order their free report for the next twelve months. This fact is not disclosed to subscribers.

17.     LifeLock also fails to adequately disclose and intentionally omits from its advertisements the true nature and limited scope of its One Million Dollar ($1,000,000) service guarantee.

3

18.     Pursuant to its own terms, the service "guarantee" is severely limited due to the numerous restrictions, limitations, and waivers that are present within its terms.

19.     Finally, LifeLock fails to disclose that the methods it employs in providing its purported protection are improper and violate the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*

## II.     VENUE

20.     Venue is appropriate in this case as Defendants transact business within the state of Florida, and more specifically in Dade County.

## III.     PARTIES

21.     Plaintiff Vilma Martinez-Azoy ("Martinez-Azoy") is a citizen of the State of Florida, and a resident of Miami-Dade County.

22.     Plaintiff Martinez-Azoy enrolled as a LifeLock subscriber in 2007.

23.     Plaintiff Martinez-Azoy is a proper party plaintiff to this action because she has suffered losses as a result of LifeLock's unlawful conduct alleged herein.

24.     Defendant LifeLock is a Delaware corporation with its principal place of business at 60 E. Rio Salado Parkway, Tempe, Arizona 85281.

25.     Defendant LifeLock maintains its principal place of business in Arizona and transacts substantial business within Florida and is amenable to personal jurisdiction in Florida.

26.     Defendant Davis is a resident of Chandler, Arizona. Defendant Davis is the Chief Executive Officer of LifeLock.

4

ZARCO, EINHORN SALKOWSKI & BRITO
BANK OF AMERICA TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

27.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named as JOHN DOES 1 through 10, inclusive, are unknown to Plaintiff and the putative class who, therefore, sue those Defendants by such fictitious names.

28.    Plaintiff and the putative Class are informed and believe and thereon allege that each Defendants sued herein as JOHN DOES 1 through 10 are and were the agents and/or employees of each and every other Defendant and were at all relevant times acting within the course and scope of such agency and employment, and/or are legally responsible in some manner for the events and happenings herein referred to, and caused injuries and damages proximately thereby to Plaintiff and the putative Class as alleged herein.

29.    Plaintiff will seek to amend this Complaint to allege the true names and capacities of such Defendants when ascertained.

### IV.    CLASS REPRESENTATION ALLEGATIONS

### THE HISTORY OF LIFELOCK

30.    In or about 2005, Defendant Davis and his colleague Robert J. Maynard, Jr. ("Maynard") founded LifeLock.

31.    According to the company's website, LifeLock is the "industry leader" in "proactive identity theft protection, specializing in prevention of identity theft rather than the reporting of it" (http://www.lifelock.com/lifelock-for-people/who-we-are/who-is-lifelock, as of May 5, 2008).

32.    LifeLock further claims that its identity theft protection system was purportedly developed as a result of "more than three years" of "solid research" and building "relationships with the right organizations.[1]"

---

[1]  (http://www.lifelock.com/lifelock-for-people/who-we-are/who-is-lifelock, as of May 15, 2008).

5

33.    Since its inception, LifeLock's purported "goal" has been "to lock down every individual's private information so no one except that individual can approve its use"[2]

## LIFELOCK'S NEFARIOUS ORIGIN

34.    Throughout its countless hours of advertising, LifeLock never discloses any of the less propitious information about its founding or its founding member, Robert Maynard.

35.    Upon information and belief, Maynard developed the idea for LifeLock while sitting in a jail cell after having been arrested for failure to repay a $16,000.00 casino marker taken out at the Mirage Hotel in Las Vegas.

36.    Additionally, Maynard, who previously acted as LifeLock's Chief Marketing Officer, is subject to an injunction, obtained by the FTC.

37.    The FTC has banned him for life from "advertising, promoting, offering for sale, selling, performing, or distributing any product or service relating to credit improvement services."

38.    The injunction issued against Maynard resulted from his production of misleading infomercials regarding the services provided by his credit improvement company, National Credit Foundation.

39.    Upon information and belief, these harsh sanctions were also meant to penalize Maynard for engaging in a scheme through which he arranged unauthorized withdrawals from customer accounts at National Credit Foundation.

40.    Finally, and perhaps most disturbing, is that, upon information and belief, Maynard himself has engaged in the very type of identity theft that his company purportedly sets out to eliminate, by stealing his own father's identity.

---

[2] Id.

6

41.     Specifically, upon information and belief, Maynard misappropriated his father's identity to obtain an American Express card.

42.     Maynard then ran up over One Hundred Thousand Dollars ($100,000.00) in debt on the charge card.

43.     Eventually, American Express sued Maynard's father in an effort to recover the balance.

## THE SERVICES LIFELOCK PROVIDES

44.     According to the company's official website, a general LifeLock subscription provides four (4) services that are designed to protect its subscribers from identity theft.

45.     First, LifeLock "ask[s] the credit bureaus to set free fraud alerts on [the subscriber's] behalf."

46.     Second, LifeLock renews those fraud alerts "every 90 days or so."

47.     Third, LifeLock requests that subscribers' names be removed from pre-approved credit card and junk mail lists.

48.     Fourth, every year, LifeLock orders free credit reports, on behalf of its subscribers, from the major credit bureaus.

## LIFELOCK MISREPRESENTS THE SCOPE OF ITS SERVICES

49.     LifeLock deceptively markets its services through:  (a) its website located at www.lifelock.com; (b) affiliated web pages; (c) press releases; (d) news publications; (e) television commercials; and (f) radio advertisements.

50.     LifeLock knows, yet fails to disclose, that the services it provides do not offer the breadth of protection that it promotes through its massive advertising campaign.

7

51.     The primary service that LifeLock provides to protect against identity theft is the placement and renewal of fraud alerts on subscribers' credit profiles.

52.     The representations made in LifeLock's advertisements regarding the scope and effectiveness of fraud alerts are misleading and fail to disclose material facts regarding the limitations inherent in the service.

53.     Through its advertisements, LifeLock misrepresents and assures consumers that it can protect against all types of fraud including, without limitation, computer hacking, password theft, and other non-credit related theft.  These representations are false.

54.     In actuality, the fraud alerts LifeLock places only work to combat credit-related identity theft, which is merely one form of theft amongst many others, which include:  (a) bank account related identity theft; (b) employment related identity theft; (c) medical information related identity theft; and (d) government documents or benefits identity theft.

55.     There is no conspicuous mention of this fact, nor any disclaimer in the plethora of information about the limitations of LifeLock's services on the company website or in LifeLock's advertisements.

56.     In contrast, LifeLock's advertisements create the illusion that LifeLock provides complete and comprehensive identity protection, by employing misrepresentations that include, but are not limited to, the following:

(a)     "Here's a report I have on John Sheiper, a young hacker – sent out a virus, put more than 250,000 computers to work stealing passwords to bank accounts from people around the world;"[3]

(b)     "LifeLock's own CEO is so positive our service secures identities that he has broadcast his social security number on our homepage, in our commercials, and in our media spots because he wants to prove that we

---

[3]     LifeLock radio advertisement.

8

can protect anyone's identity from scammers, thieves, and hackers;"[4]

(c)    "This very second, someone could be using your identity to...clear out your bank accounts...Stop it from happening now. Call LifeLock...;"[5] and

(d)    "LifeLock, the industry leader in proactive identity theft protection, offers a proven solution that prevents your identity from being stolen before it happens."[6]

## LIFELOCK MISREPRESENTS THE EFFECTIVENESS OF ITS SERVICES

57.    Through its deceptive advertisements and marketing tools, LifeLock misrepresents the effectiveness of the services it provides.

58.    LifeLock knows, yet fails to disclose, that the services it provides do not offer the comprehensive level of protection that is advertised to consumers through its massive advertising campaign.

59.    Specifically, LifeLock misrepresents that its subscribers will receive a telephone call each time his or her personal information is used to apply for new credit.

60.    LifeLock fails to advise subscribers that companies and institutions that issue credit **are not required by law** to contact them, even if they have fraud alerts in place.

61.    LifeLock's misrepresentations regarding the effectiveness of its services include, but are not limited to, the following:

(a)    "Once fraud alerts have been placed, you will receive a phone call — most people register their cell phone numbers — anytime someone tries to open a credit line in your name;"[7]

(b)    "If it's you trying to open the account, then you'll get the call *while you're standing there*;"[8]

---

[4]  *See* http://lifelockprotection.wordpress.com/2007/11/10/lifelock-protect-your-good-name, as of May 15, 2008.

[5]  LifeLock radio advertisement.

[6]  *See* http://www.lifelock.com/default.aspx?promocode=Shareasale&SSAID=252168, as of May 15, 2008.

[7]  Statement by Defendant Davis, CEO of LifeLock, Inc., in article entitled "Fraud alerts can protect ID," www.azstarnet.com/business/202488, as of May 15, 2008.

ZARCO, EINHORN SALKOWSKI & BRITO
BANK OF AMERICA TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

(c) "The alert *ensures* you will receive a phone call *whenever* someone –even you-tries to establish using your identifying information...;"[9]

(d) "When someone seeks to open a new account, the creditor *will call* to confirm that it's really you through a series of identifying questions;"[10]

(e) "If someone is trying to use your personal information, you will be contacted by the creditor that is issuing the line of credit;[11]

(f) "You will know whenever anyone tries to use your credit before damage is done;"[12]

(g) "The most important difference between LifeLock and other fraud protection services is our proactive approach to identity theft. LifeLock is not a credit monitoring service that alerts you when we find a problem, we actually stop crime *before it happens by having the credit bureaus alert you* when someone tries to make changes in your status or inquire about your credit;"[13] and

(h) "We start by putting fraud alerts on your information with all three of the major credit card bureaus and ChexSystems, allowing only you to be able to apply for credit lines or make changes to your accounts. This is the most important step in our service because it prevents thieves from being able to use your identity, since the fraud alert *requires creditors to contact you* by the phone number listed on LifeLock's report before verifying any changes, such as extending limits or changing billing addresses."[14]

---

[8]  Statement by Defendant Davis, CEO of LifeLock, Inc., in article entitled "Fraud alerts can protect ID," www.azstarnet.com/business/202488, as of May 15, 2008. (Emphasis added.)

[9]  *See* www.mylifelock.org, as of May 15, 2008. (Emphasis added.)

[10]  Statement by Defendant Davis, CEO of LifeLock, Inc., in article entitled "Protecting identity among the tell-all generation," www.startribune.com/templates/Print This Story?sid=1191451, as of May 15, 2008. (Emphasis added.)

[11]  *See* http://www.lifelock.com/lifelock-for-people/what-to-expect/who-calls-me-to-let-me-know-that-someone-is-attempting-to-obtain-credit-in-my-name, as of May 15, 2008.

[12]  *See* http://www.idtheftquiz.org, as of May 15, 2008.

[13]  *See* http://lifelockprotection.wordpress.com/2007/11/10/lifelock-protect-your-good-name/, as of May 15, 2008). (Emphasis added.)

[14]  *See* http://lifelockprotection.wordpress.com/2007/11/01/comparing-lifelock/, as of May 15, 2008. (Emphasis added.)

10

## LIFELOCK CONCEALS AND OMITS
## THE POTENTIAL HARMS THAT ITS SERVICES
## COULD HAVE ON SUBSCRIBERS' CREDIT PROFILES

62.    Through its deceptive advertisements and marketing tools, LifeLock conceals and omits the adverse effects that its services could have on its subscribers' credit profiles.

63.    LifeLock knows yet fails to disclose that the services it provides can have an adverse impact on a subscriber's credit profile.

64.    For instance, LifeLock's advertisements omit and conceal the fact that its placement and continuous renewal of fraud alerts could actually prohibit its subscribers from obtaining credit.

65.    Additionally, LifeLock's advertisements omit and conceal the fact that its placement and continuous renewal of fraud alerts could have an adverse impact on its subscribers' ability to obtain a home loan or refinance their existing loans.

66.    LifeLock's advertisements also omit and conceal the fact that each time a fraud alert intercepts an attempt to obtain credit, an inquiry is created on the subscriber's credit profile, which can adversely affect the subscriber's credit score.

## LIFELOCK OMITS OR CONCEALS THE TRUE ORIGIN
## OF THE CREDIT REPORT IT ORDERS FOR ITS SUBSCRIBERS

67.    LifeLock represents to consumers that its services include a credit report from each of the three credit bureaus every twelve (12) months.

68.    However, through its deceptive advertisements and marketing tools, LifeLock omits and conceals that the credit reports it orders on behalf of its subscribers are the free annual credit report to which subscribers are already entitled to receive without being a LifeLock subscriber.

69.    LifeLock also omits and conceals that by its ordering of the credit report, the

11

subscribers are now rendered ineligible to order the free report on their own for the next 12 months.

70.     LifeLock further omits and conceals that ordering the free credit report from www.annualcreditreport.com is duplicative of the free credit report consumers are entitled to when placing a fraud alert under the Fair Credit Reporting Act, 15 U.S.C. § 1681c-1(a)(2)(B).

## LIFELOCK'S TERMS AND CONDITIONS ARE SUBSTANTIVELY AND PROCEDURALLY UNCONSCIONABLE

71.     The services LifeLock provides to its subscribers are governed by LifeLock's "Terms and Conditions."

72.     LifeLock's "Terms and Conditions" are presented to consumers on a take-it-or-leave-it basis, in a standardized printed form, and therefore is a contract of adhesion.

73.     None of LifeLock's subscribers, including Plaintiff and the putative class, had any bargaining power with which to negotiate the "Terms and Conditions."

74.     Additionally, the LifeLock "Terms and Conditions" include an arbitration clause that purports to prohibit class actions.

75.     This provision is meant to deter and eliminate any possibility for a consumer to seek redress for any grievances for the deceptive conduct perpetrated by LifeLock.

76.     While LifeLock purports to pay all of the costs of a subscriber's arbitration, this representation is false and misleading, as it fails to take into account the significant ancillary costs incurred as a result of the subscriber being required to arbitrate his or her individual claims in the State of Arizona.

77.     Such costs include, but are not limited to, travel to and lodging in Arizona for both the subscriber and his or her attorney.

12

78.     Moreover, the LifeLock "Terms and Conditions" attempt to require subscribers to pay their attorney's fees and costs, regardless of whether they prevail in any arbitration.

79.     Such attorney's fees and costs exponentially exceed the cost of LifeLock's subscription fee, which renders the individual pursuit of one's claims against LifeLock not feasible.

80.     Accordingly, the arbitration provision does not allow LifeLock subscribers, including Plaintiff and the putative class, to adequately vindicate their rights.

81.     Such a provision is so one-sided that it shocks the conscience, and is therefore unconscionable and unenforceable.

## LIFELOCK MISREPRENTS THE SCOPE
## AND NATURE OF ITS $1,000,000 SERVICE GUARANTEE

82.     LifeLock deceives consumers further by touting its "one-million dollar service guarantee."

83.     This service falsely and deceptively purports to insulate subscribers in the event LifeLock's services are ineffective.

84.     LifeLock's advertisements deceptively misrepresent the scope of its purported one-million dollar service guarantee, drastically overstating the actual value of its protections, which are essentially rendered useless by virtue of the restrictions, limitations and waivers contained within its terms.

85.     Examples of LifeLock's misrepresentations regarding its million dollar service guarantee include, without limitation, the following:

(a)     "With our million dollar guarantee, you have absolutely *nothing to lose* by signing up with us;"[15]

---

[15]     *See* http://lifelockprotection.wordpress.com/2007/10/22/the-lifelock-guarantee/, as of May 15, 2008. (Emphasis added.)

13

(b) "If your Identity [sic] is misused while you are a member of LifeLock, we'll spend up to $1,000,000 to make it right;"[16] and

(c) "LifeLock will pay you up to $1 million for damages stemming from the security breach. LifeLock says they will "make sure that you get every dollar back, lost wages, costs, actual losses, every dollar up to $1,000,000. Period."[17]

86. Contrary to the representations made in LifeLock's misleading advertisements, the terms and conditions of the actual guarantee reveal protections that are significantly limited in comparison to those advertised.

87. Specifically, the express terms of the Service Guarantee, at section "2," paragraph "G," disclaim as follows

> WE WILL PAY UP TO $1,000,000 TO CURE THE FAILURE OR DEFECT IN OUR SERVICE, PER CLIENT, PER LIFETIME FOR ALL INCIDENTS IN THE AGGREGATE, REGARDLESS OF CIRCUMSTANCE...WE WILL NOT MAKE PAYMENTS TO YOU FOR ANY LOSS YOU MAY INCUR. OTHER THAN OUR SERVICE GUARANTEE, AND EXCEPT AS OTHERWISE SET OUT HEREIN WE MAKE NO REPRESENTATION OR WARRANTY ABOUT OUR SERVICE OF ANY KIND, AND WE DISCLAIM ANY IMPLIED WARRANTIES OUTSIDE OF OUR SERVICE GUARANTEE, SUCH AS A WARRANTY OF MERCHANTABILITY OR FITNESS OF OUR SERVICE FOR ANY PARTICULAR PURPOSE.

88. In actuality, the narrow terms of LifeLock's service guarantee disclaim all consequential damages and all liability for anything beyond a defect in their service.

89. Accordingly, the service guarantee is only enforceable when LifeLock fails to properly place a fraud alert or properly request to remove the subscriber from a pre-approved credit card or junk mail list.

---

[16] *See* http://www.lifelock.com/lifelock-for-people.aspx, as of May 15, 2008.
[17] *See* http://www.lifelocklife.com/million-dollar-guarantee.html, as of May 15, 2008.

14

90.    This language is intended to mislead and deter members from asking LifeLock to cover losses or pay for consequential damages such as hiring professionals to restore their losses, and to provide LifeLock with a basis for denying any such claims.

91.    This language in inconspicuously embedded within LifeLock's "Terms & Conditions."

92.    This language is completely contradictory to the misleading impression that is created by LifeLock's advertisements – namely, that subscribers will receive reimbursement up to one-million dollars ($1,000,000) for financial losses sustained as a result of identity theft.

93.    For example, assume LifeLock properly places a fraud alert on a subscriber's credit profile. Now assume that a lender issues a credit card to an identity thief because that lender never called the subscriber. In that case, LifeLock would avoid having to make good on its service guarantee since it properly administered its services. This is deceptive.

94.    In further contrast with the misrepresentations in its advertisements, in the event that the Service Guarantee is triggered, LifeLock is not required to "spend up to $1,000,000.00 to make it right" or "cover all losses and all expenses up to one million dollars" under the Terms & Conditions."[18]

95.    Rather, LifeLock would only be required to:  (a) reimburse direct expenses the subscriber incurred up to One Million Dollars ($1,000,000.00); and (b) assist and advise damaged subscribers by paying third-party professionals up to One Million Dollars ($1,000,000.00) to resolve the subscribers' damages, including, without limitation, damages to their credit profiles and credit ratings.

---

[18] *See* http://www.lifelock.com/lifelock-for-people.aspx, as of May 15, 2008.

ZARCO, EINHORN SALKOWSKI & BRITO
BANK OF AMERICA TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

96.    LifeLock will not use the advertised One Million Dollars ($1,000,000.00) to actually recoup any of the subscribers' financial losses, as the advertisements lead consumers to believe.

## LIFELOCK MISREPRESENTS THE SECURITY OF SUBSCRIBERS' PERSONAL INFORMATION

97.    LifeLock misrepresents its ability to maintain the security of its subscribers' personal and confidential information.

98.    LifeLock subscribers who enroll on-line are required to furnish LifeLock with confidential sensitive personal information, including their social security numbers, which they submit over the internet to complete their on-line application.

99.    LifeLock dedicates an entire page of its website to assuring subscribers that it "follows **industry best practices** to secure and protect [their] personal information."[19]

100.    According to the LifeLock website, LifeLock is "ISO 27001 certified for data and operational security," and conducts "background checks on **all of our** employees, including regular random drug testing."[20]

101.    The LifeLock website further states that "All of our facilities are built with the latest biometric security access as well as state-of-the-art surveillance and alarm systems," and that "No computers anywhere outside of secure data centers have our member's critical information on them."[21]

102.    Each of these representations is false and misleading.

103.    LifeLock hires third-party contractors who work remotely from their homes.

---

[19] http://lifelock.com/lifelock-for-people/how-we-do-it/how-does-lifelock-secure-my-personal-information, as of May 15, 2008.
[20] Id.
[21] Id.

16

104.    These third-party contractors possess, maintain, and/or have unfettered access to subscribers' social security numbers, credit card numbers, home addresses and dates of birth.

105.    LifeLock does not conduct background checks on all of these third-party contractors.

106.    LifeLock fails to implement any security measures or protocols to secure and protect subscribers' confidential and sensitive information once it has been accessed and is in the control or possession of these third-party contractors.

107.    LifeLock's website is also vulnerable to compromise and as a result, LifeLock's subscription database is accessible by third-parties, including computer hackers.

108.    As a result of the infirmity of the LifeLock website, the sensitive and confidential information provided by LifeLock subscribers, through the on-line enrollment application, can be accessed and misappropriated by third-parties, including computer hackers.

109.    LifeLock has been advised of this lapse in security, and to date, has not resolved the problem.

## THE PLAINTIFF VILMA MARTINEZ-AZOY

110.    In or about October 2007, Plaintiff Vilma Martinez-Azoy ("Martinez-Azoy") decided to subscribe to LifeLock after viewing the company's television and streaming internet advertisements.

111.    Based on those advertisements, Martinez-Azoy was lead to believe that LifeLock would provide comprehensive protection against all forms of identity theft.

17

112.   Martinez-Azoy's decision to subscribe to LifeLock was also heavily based on the company's purported One Million Dollar ($1,000,000) service guarantee, which, she was led to believe, would reimburse her for any financial damage she sustained as a result of identity theft.

113.   Upon information and belief, as a result of its fraudulent campaign, LifeLock has generated nearly one million subscribers, each of whom pay approximately One Hundred and Ten Dollars ($110.00) per year for its "services."

114.   Thus, by virtue of LifeLock's deceptive scheme, its subscribers have each suffered an ascertainable loss in the form of the subscription fees they pay for services that: (a) do not provide the level of identity protection advertised; (b) may actually impair their ability to obtain credit or financing; and (c) provide a service guarantee that is, at best, illusory.

## CLASS SPECIFIC ALLEGATIONS

115.   This action is brought as a class action pursuant to Fla. R. Civ. P. 1.220, on behalf of the named Plaintiff and all others similarly situated.

116.   The class is tentatively defined as:

All residents of the state of Florida (including persons and business entities) that subscribed to LifeLock during the longest period permitted by the applicable statutes of limitations. Excluded from the Class are the officers, directors and employees of Defendants and their respective legal representatives, heirs, successors and assigns.

117.   Upon information and belief, the class has more than 1,000 members (including present and past subscribers).

118.   The prosecution of separate claims by individual members of the class creates a risk that inconsistent or varying adjudications would establish incompatible standards of conduct for the Defendants, as contemplated by Fla. R. Civ. P. 1.220 (b)(1)(A).

18

ZARCO, EINHORN SALKOWSKI & BRITO
BANK OF AMERICA TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

119.    Defendants have acted on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole, appropriate pursuant to Fla. R. Civ. P. 1.220 (b)(2).

120.    All members of the class assert claims for violation of the law as more particularly set forth herein.

121.    All class members pray for money damages.

122.    All class members pray for temporary and permanent injunctive relief, as well as declaratory relief, because the parties opposing the class have acted on grounds generally applicable to the class, thereby making appropriate injunctive relief to the class as a whole.

123.    The proposed class meets the criteria set forth for the maintenance of a class action as described below.

124.    **Numerosity:**  Members of the class are so numerous that their individual joinder is impractical.  The precise identities, number and addresses of members of the class are unknown to Plaintiff, but may and should be known with proper and full discovery of Defendants, third-parties, and their respective records.

125.    **Existence of Common Questions of Fact:** The common nucleus of operative facts to be determined for the class as a whole center upon the deceptive advertising and marketing campaign employed by LifeLock and its agents in Florida.  The questions of fact common to class members include, but are not limited to, the deceptive advertising and marketing campaign described herein.

126.    **Existence of Common Questions of Law:**    There is a well-defined commonality and community of interest in the questions of fact and law affecting the members of the class.  The common questions of fact and law include, among other things:

19

(a)     Whether and to what extent Defendants' practices, conduct, and misrepresentations violate Florida state law;

(b)     Whether Defendants engaged in any unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce within the meaning of the Florida Deceptive and Unfair Trade Practices Act, ("FDUTPA"), *Fla. Stat. § 501.204*;

(c)     Whether Plaintiff and the putative class are "Consumers" pursuant to the FDUTPA, *Fla. Stat. § 501.203*;

(d)     Whether LifeLock's advertising and sale of its purported identity theft protection services constitutes the conduct of "trade or commerce" pursuant to the FDUTPA, *Fla. Stat. § 501.203*;

(e)     Whether Defendants' affirmative statements and material omissions constitute an unfair or deceptive act or practice;

(f)     Whether LifeLock's radio, television, internet and print advertisements contained fraudulent representations and omissions;

(g)     Whether the arbitration provision in the LifeLock "Terms & Conditions" is unconscionable and unenforceable;

(h)     Whether the class action prohibition provision in the LifeLock "Terms & Conditions" is unconscionable and unenforceable;

(i)     Whether the exculpatory provision dealing with attorney's fees and costs contained in the LifeLock "Terms & Conditions" is unconscionable and unenforceable;

(j)     Whether Plaintiff and the putative class are entitled to recover

ZARCO, EINHORN SALKOWSKI & BRITO
BANK OF AMERICA TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

compensatory, exemplary, statutory, minimum, and/or punitive damages, based on Defendants' fraudulent and illegal conduct or practices; and

(k)   Whether Plaintiff and the putative class are entitled to an injunction, enjoining LifeLock from further engaging in the deceptive practices alleged herein.

127.   **Typicality:**  Plaintiff is a member of the class.  Plaintiff's claims have a common origin and share common bases.  Her claims originate from the same illegal and fraudulent practices of Defendants, and Defendants act in the same way toward Plaintiffs and the class members.  If brought and prosecuted individually, the claims of each putative class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

128.   **Adequacy of Representation:**  Plaintiff can and will fairly and adequately represent and protect the interests of all members of the class.  She has no interests that conflict with or are antagonistic to the interests of the class members, and intends to prosecute this action vigorously.  Plaintiff has retained counsel competent and experienced in class action and complex commercial litigation.  As such, Plaintiff's counsel will fairly and adequately protect the interests of the class.

129.   Plaintiff's counsel will fairly and adequately protect the interests of the class.

130.   **Superiority:**  A class action is superior to any other available method for the fair and efficient adjudication of this controversy, because: (a) common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there will be efficiencies to the courts and the parties in litigating the common issues on a class

21

basis rather than on an individual basis; (b) the damages to some class members are larger than to others, but all claims are sufficiently small that individual prosecution of the claim would not be an economically viable alternative; (c) class treatment is desired for optimal deterrence and compensation; (d) the economies of scale inherent in litigating similar claims on a common basis will enable this case to be litigated on a cost-efficient basis as a class action, especially when compared to repetitive individual actions; (e) no unusual difficulties are likely to be encountered in the management of this class action as the proofs as to liability are common to all class members; and (f) this action would be effectively impossible to bring as individual actions leaving plaintiffs and others similarly situated with no viable remedy.

**FIRST COUNT**
**VIOLATION OF THE FDUTPA, Fla. Stat. § 501.201 et.seq.**

131.    Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs.

132.    Plaintiff and the putative class members are "consumers" as contemplated by the FDUTPA.

133.    LifeLock's deceptive marketing and advertising campaign constitute "trade and commerce" as contemplated by the FDUTPA.

134.    As alleged with specificity in this Complaint, Defendants committed *per se* unfair and deceptive acts or practices in the course of trade or commerce – including, but not limited to, the following:

(a)      representing that the goods or services they advertise and sell have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

(b)      advertising goods with intent not to sell them as advertised;

22

(c)     engaging in conduct which creates a likelihood of confusion or misunderstanding;

(d)     acting, using or employing deception, fraud, misrepresentation, or the concealment, suppression, or omission of any material fact; and

(e)     including exculpatory provisions in its "Terms and Conditions."

135.    Defendants' conduct also constitutes general unfair or deceptive acts or practices in violation of FDUTPA.

136.    Along with others known and unknown, Defendant Davis caused LifeLock to engage in these *per se* and general unfair or deceptive acts or practices.

137.    Defendant Davis participated in the deceptive practices alleged in this Complaint by overseeing, directing and otherwise ratifying the action of the corporation he controls, to obtain personal financial benefits.

138.    As a result of LifeLock's unfair or deceptive acts or practices, Plaintiff and the putative class were induced to subscribe to LifeLock's services.

139.    The monthly or annual subscription fees paid by Plaintiff and the putative class constitute ascertainable losses.

## SECOND COUNT
## INJUNCTIVE RELIEF

140.    Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs.

141.    As a result of the foregoing, and because money damages are inadequate to fully compensate Plaintiff and others similarly situated, or to prevent further instances of the future violations, preliminary and permanent injunctive relief is warranted as follows:

23

      (a) LifeLock shall cease advertising its services in Florida, unless and until all advertisements are revised to include language that is neither deceptive or misleading; and

      (b) LifeLock shall be permanently enjoined from implementing the marketing scheme described herein or incorporated by reference.

## THIRD COUNT
## DECLARATORY JUDGMENT

142.    Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs.

143.    In addition to the extremely one-sided terms included in its form adhesive "Terms and Conditions," LifeLock has included procedural obstacles, which intend to discourage claims against it and/or attempt to shield it from any liability.

144.    These provisions are unenforceable.

145.    The provisions include, *inter alia*:

      (a) Paragraph "11" requiring that all claims or disputes against LifeLock be governed by the laws of the State of Arizona; and

      (b) Paragraph "12" requiring that: (i) any disputes or controversies arising from the "Terms & Conditions," against LifeLock, be settled by confidential arbitration; (ii) the subscriber agree not to participate in any dispute against LifeLock as a class representative or as a member of a putative class; and (iii) the subscriber pay his or her attorney's fees and costs.

146.    The onerous provisions in the form adhesive franchise agreement are violative of West Virginia public policy and shall be declared void and unenforceable.

24

147.   Plaintiff is therefore entitled to a declaration from the Court that the LifeLock "Terms and Conditions," are void and unenforceable, or in the alternative, the Court shall strike those provisions that are unenforceable.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectively prays for the following relief:

a.   That the Court enter an Order certifying the proposed class herein and appointing Plaintiff and the undersigned counsel of record to represent the class;

b.   That the Court enter an Order rescinding the LifeLock subscription of Plaintiff and each and every member of the putative class based on Defendants' fraudulent inducement thereof or, alternatively, damages for said fraudulent conduct;

c.   That the Court issue a preliminary injunction enjoining Defendants and all others, known and unknown, from continuing to engage in unlawful conduct as set forth in this Complaint;

d.   That the Court issue a permanent injunction enjoining Defendants and all others, known and unknown, from continuing to engage in unlawful conduct as set forth in this Complaint;

e.   That the Court enter a declaratory judgment, pursuant to Fla. Stat. § 501.211, declaring the "Terms & Conditions" entered into by Plaintiff and each and every member of the putative class unconscionable and, therefore, unenforceable; or in the alternative, sever the portions of the "Terms and Conditions" that the Court deems unconscionable and unenforceable, and enforcing the remaining valid portions of the "Terms and Conditions;"

f.   That the Court enter a declaratory judgment, pursuant to Fla. Stat. § 501.211., declaring the acts of Defendants to be in violation of the FDUTPA;

ZARCO, EINHORN SALKOWSKI & BRITO
BANK OF AMERICA TOWER. 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

g.     That Plaintiff, and each member of the putative class, be awarded actual damages for each violation of the FDUTPA;

h.     That Plaintiff, and each member of the putative class, be awarded punitive damages against Defendants, in an amount to be determined at trial, for the willful, wanton and/or reckless disregard for their legal rights;

i.     That Plaintiff, and each member of the putative class, be awarded costs and a reasonable attorney's fee, pursuant to the FDUTPA and/or the general authority of this Court;

j.     That Plaintiff, and each member of the putative class, be awarded any and all additional compensatory, incidental and consequential damages, in an amount to be determined at trial;

k.     That Plaintiff, and each member of the putative class, be awarded prejudgment and post-judgment interest on any and all of the foregoing damages, and

l.     That Plaintiff, and each member of the putative class, be awarded such further and general relief – both legal and equitable – as this Court may deem appropriate.

ZARCO, EINHORN SALKOWSKI & BRITO
BANK OF AMERICA TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by Jury as to all issues.

Respectfully submitted,

**MARKS & KLEIN, LLP**
63 Riverside Drive
Red Bank, New Jersey 07701
Telephone: (732) 747-7100
Facsimile: (732) 219-0625
**JUSTIN M. KLEIN**
**DAVID S. PARIS**
Co-Counsel for Plaintiffs
*Pro hac vice* admission to be sought

-and-

**ZARCO EINHORN SALKOWSKI & BRITO P.A.**
*Attorneys for Plaintiffs*
Bank of America Tower
100 S.E. 2nd Street, 27th Floor
Miami, Florida 33131
Telephone: (305) 374-5418
Facsimile: (305) 374-5428

By: _____
**ROBERT M. EINHORN**
Florida Bar No.  858188
**MARLON J. WEISS**
Florida Bar No. 49057

ZARCO, EINHORN SALKOWSKI & BRITO
BANK OF AMERICA TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

CIVIL COVER SHEET

The JS-44 Civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**July 11, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI
ELECTRONIC D.C.

**I(a)** PLAINTIFF, Vilma Martinez-Azoy, Individually and on behalf of all others similarly situated.

DEFENDANT, LIFELOCK, INC., a Delaware Corporation citizen of the State of Arizona, and JOHN DAVIS 1 through

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

Miami-Dade County, Florida

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

*Dade Co. 08CV 21989 Moore/Simonton*

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Robert N. Einhorn, Esq. and Marlon J. Weiss, Esq., Zarco Einhorn Salkowski & Brito, P.A., Bank of America Tower, 100 S.E. 2nd St., 27th Floor, Miami, Florida 33131; and Justin M. Klein, Esq. and David S. Paris, Esqs., Marks & Klein, LLP, 63 Riverside Drive, Red Bank, New Jersey 07701 Telephone: (305) 374-5418 -- Facsimile: (305) 374-5428

ATTORNEYS (IF KNOWN)
Francisco O. Sanchez, Esq.
Greenberg Traurig, P.A., 1221 Brickell Avenue, Miami, Florida 33131
Telephone: (305) 579-0500 -- Facsimile: (305) 579-0717

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
**MIAMI-DADE**, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN X ONE BOX ONLY)

- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only) (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated if Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY. Removal pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446. This Court has original subject-matter jurisdiction over claims brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq. This Court also has original jurisdiction over this matter because the plaintiff and the defendants are citizens of different states, the amount in controversy exceeds $75,000, and none of the defendants are citizens of the State of Florida.

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | A PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employer's Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety-Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | | B SOCIAL SECURITY | ☐ 875 Customer Challenge 12USC3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 861 HIA (1395(f) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | PERSONAL INJURY | A LABOR | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | ☐ 362 Personal Injury-Med. Malpractice | | ☐ 863 DIWC/DIWW 405(g)) | ☐ 893 Environmental Matters |
| | ☐ 365 Personal Injury-Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | ☐ 368 Asbestos Personnel Injury Product Liability | ☐ 720 Labor Management Relations B | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| A REAL PROPERTY | PERSONAL PROPERTY | ☐ 730 Labor Management Reporting & Disclosure Act | A FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 210 Land Condemnation | ☐ 370 Other Fraud | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure B | ☐ 371 Truth in Lending B | ☐ 790 Other Labor Litigation | ☐ 871 IRS Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions* * A or B |
| ☐ 230 Rent Lease and Ejectment | ☐ 380 Other Personal Property Damage | ☐ 791 Employee Ret. Inc. Security Act B | | |
| ☐ 240 Torts to Land | ☐ 385 Property Damage Product Liability | | | |
| ☐ 245 Tort Product Liability | A CIVIL RIGHTS | B PRISONER PETITIONS | | |
| ☐ 290 All Other Real Property | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | | |
| | ☐ 442 Employment | ☐ 530 General* | | |
| | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | | |
| | ☐ 444 Welfare | ☐ 540 Mandamus & Other* | | |
| | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights *A or B | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

- ☐ 1. Original Proceeding
- ☒ 2. Removed From State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Refiled
- ☐ 5. Transferred from another district (Specify)
- ☐ 6. Multidistrict Litigation
- ☐ 7. Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT** ☒ CHECK IF THIS IS A CLASS ACTION under F.R.C.P. 23

DEMAND

Check YES only if demanded in complaint.
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See Instructions): JUDGE _____ DOCKET NUMBER _____

DATE July 11, 2008

SIGNATURE OF ATTORNEY OF RECORD

Francisco O. Sanchez

FOR OFFICE USE ONLY:
RECEIPT NO. *9836 08* AMOUNT *$ 350.00* APPLY IFP _____ JUDGE _____ MAGISTRATE JUDGE _____

*07/11/08*